**TALLAHASSEE THEATRES, Inc., et al. v. DUE, et al.**
No. 18863.
Circuit Court, Leon County.
December 5, 1963.

Wilfred C. Varn of Ervin, Pennington & Varn, Tallahassee, for plaintiffs.

Tobias Simon and Howard W. Dixon, both of Miami, Herbert L. Heiken and Edwin Barger, both of Miami Beach, and Charles F. Wilson, Pensacola, for defendants.

BEN C. WILLIS, Circuit Judge.

*Summary final decree:* This cause came on to be heard on the motion of the plaintiffs for a summary final decree, and argument of counsel for the respective parties having been heard and the court having considered pleadings, depositions and other documents on file together with testimony previously taken in open court at the various hearings in this cause, and the court being advised of its opinion in the premises, it is thereupon ordered, adjudged and decreed that said motion be and the same is hereby granted, in part, and to the extent hereinafter set forth.

It appears to the court that there is no genuine issue as to any material fact and that as a matter of law the plaintiffs are presently entitled to be granted a summary final decree to the extent of a permanent injunction containing the terms of the temporary restraining order as amended heretofore entered in this cause.

It has been made to appear without contradiction that the defendants Patricia Stephens Due, John Dorsey Due, Jr., Rubin Kenon, Gloria Smith, Julius Hamilton and Ira Robinson individually and/or as a member, local leader and representative of the Florida A and M University chapter of the Congress of Racial

Equality, also known as CORE, a voluntary unincorporated association, together with a large number of other persons acting in concert with them were, prior to the filing of the complaint herein, engaged in demonstrations and other conduct at and in the vicinity of the plaintiffs' theaters in Tallahassee, Florida; that such demonstrations constituted an interference with the rights of the plaintiffs in the operation of their theaters and constituted unreasonable picketing and if allowed to continue would inflict irreparable injury to the plaintiffs in the operation of their theaters.

It will be merely noted herein that this court has previously entered a temporary restraining order, dated May 29, 1963, which was supplemented by an enforcement order dated May 30, 1963, and was on May 31, 1963 modified with regard to peaceful and reasonable picketing and with regard to the previous restraint from attempting to enter upon the premises of the theaters. It will also be noted that there have been involved certain contempt proceedings in which some of the above named defendants and others acting in concert with them have been adjudged in contempt of this court for violation of such orders. By virtue of the various hearings, including the taking of considerable testimony in adversary proceedings, the facts and issues of law have been well established.

The contentions of the respective parties may be stated as follows —

(1)   The plaintiffs operate in the city of Tallahassee two motion picture theaters, one known as the Florida Theater and located on North Monroe Street, and the other the State Theater located on East College Avenue. At each of these theaters the plaintiffs have announced and otherwise indicated to patrons and prospective patrons the reservation of the right to refuse admission to any person. In substance they each have a policy, acting through its manager, to be selective as to the patrons and customers admitted to the theater with such selectivity to be completely and solely within the judgment and discretion of the manager. They contend they have this right and that in the enjoyment of the use of their property they may obtain the aid of this court through its injunctive processes to preserve such enjoyment from unreasonable infringement or interference by others, including the defendants. They further contend that the conduct of the defendants acting together and in concert with others of like persuasion and point of view has produced at the theater and in the street and sidewalk in front of it demonstrations and picketing and other activity which constitutes an unreasonable interference with the operation of the theater on the basis of selectivity, which is mentioned above.

(2)　The defendants contend that they are and have been exercising their right of freedom of speech and freedom to contract, the right to assemble and to otherwise carry out their purpose to protest against the refusal of the theater to admit them and others similarly situated. Their contention is that they have acted in a peaceful, orderly and lawful manner fully within their rights to exercise constitutional privileges and that the plaintiffs have no right to invoke and obtain the injunctive processes of this court to interfere with their conduct. They further contend that the actual policy of the management of both theaters is to exclude all persons who are Negroes, regardless of any other circumstances and that such discrimination on account of race is illegal and that for this court to exercise its injunctive powers in support of such discrimination constitutes a denial of equal protection of the law and due process of the law contrary to the 14th amendment of the United States constitution. They also urge that under other constitutional provisions there would be a denial of their rights.

The record in this case would tend to show that it has been the practice of the plaintiffs to refuse to admit Negroes who sought admission to the theater. It also appears that some white persons have been refused admission. However, it is implicit in the admitted policy of the plaintiffs that they claim the right to exclude persons who are Negroes. It thus appears that the plaintiffs are contending that they possess rights with regard to the theater's admission of persons to its place of business which would be broad enough to exclude persons on account of race whether such policy be revealed or concealed.

It thus becomes initially necessary to determine whether or not the right of selection of patrons to plaintiffs' theaters has a limitation in law against discrimination on account of race.

No case has been cited to the court and the court's own research has revealed none which holds that the owner of a theater operating on private property and otherwise engaged in a private pursuit is legally obligated to admit to its shows or other activities on such private property any particular person or class of persons. In the Civil Rights Cases, 109 U.S. 3, 27 L.Ed. 835, it was specifically held that the Congress could not under the powers conferred under the 13th and 14th amendments, compel proprietors of places of public amusement not to discriminate against persons on account of race. There has been cited no statute of this state and the court is aware of none which places any restraint upon the selection of patronage by private theater owners and operators. Accordingly, it has not been made to appear that a policy of admission which would reserve the right to exclude on account of race would be violative of any law applicable to the operation of such theaters.

This brings the court to a consideration of whether or not the court is prohibited by the 14th amendment to the constitution of the United States from exercising its injunctive processes to protect the plaintiffs from irreparable injury by restraining those engaged in unreasonable activity in protest of and demonstration against the segregation policies of the plaintiffs. It is contended that even if the plaintiffs' policy of selectivity is lawful, it is unlawful for this court to exercise its power, as a part of the sovereign power of the state, in support or protection of such policy. Cited in support are the cases of Shelley v. Kramer and McGhee v. Sipes, 334 U.S. 1, 92 L.Ed. 1161, 3 ALR 2d 441, which ruled that a state court may not enforce a restrictive covenant which discriminates against a race.

The court is of the view that the restrictive covenant cases are not in point. In those cases there were third parties who sought to restrain the exercise of contractual rights other parties had made between themselves. In the case at bar there has been presented a circumstance of the plaintiffs, in pursuit of a particular policy of selectivity of clientele, asking that they be protected against an unreasonable interference with the operation of the business in which they are engaged and with the customers they choose to do business with. It is quite apparent that there are several legal rights involved here. There is the legal right of the plaintiffs to enter into, engage in and operate their businesses without unreasonable interference or harassment. If such unreasonable interference or harassment arises and its continuation is such as would inflict irreparable injury and otherwise entitle the plaintiffs in equity to the injunctive processes of this court, then the plaintiffs are entitled to such relief.

On the other hand there are the rights of free speech, freedom of assembly, and freedom to seek contractual relationships, which repose in the defendants and all other citizens. There is the freedom to express disapproval of plaintiffs' policies of selectivity or segregation and to do so by peaceful and orderly means, including reasonable picketing. There is also the freedom to peaceably assemble and to act in concert in reasonable numbers to express disapproval of such policies and seek to persuade others to such view. However, all of such rights are required to be done in a peaceful and orderly manner and without interference with the actual operation of the plaintiffs' business or the harassment of patrons doing business or wanting to do business with the plaintiffs.

It is axiomatic that all constitutional rights of persons are subject to the limitation that they do not destroy or unreasonably impair the constitutional rights of others. Thus in a controversy

between citizens, each having and undertaking to exercise constitutional rights, it becomes the duty of the court, when such controversy is brought in as a justiciable cause, to undertake to blend the rights of all parties and to give them a fair field of operation within the bounds of reason and justice and with full recognition of the liberties and privileges of all. It is the view of this court that if it becomes necessary to exercise injunctive processes to carry into effect the protection and recognition of the rights of parties, the court not only has the power but is under a duty to do so.

It is the view of the court that the terms of the restraining order heretofore entered in this cause as amended from time to time do constitute a proper blending of the rights of the parties. It further appears that under the circumstances of this case, which are not in genuine dispute, the plaintiffs are entitled to a permanent injunction against unreasonable picketing and demonstrating by the defendants and persons acting in concert or in conjunction with them to the extent hereinafter set forth. It is further the view of this court that such an injunction gives full recognition to the constitutional rights of all persons and does not constitute an unlawful deprivation of the equal protection of the law or of due process of law or other constitutional right or privilege.

It is thereupon ordered, adjudged and decreed as follows —

That Patricia Stephens Due, John Dorsey Due, Jr., Rubin Kenon, Gloria Smith, Julius Hamilton and Ira Robinson and all members and associates of the Florida A and M University chapter of the Congress of Racial Equality, their agents, servants and employees and all persons acting in concert or in conjunction with them be and they are hereby permanently enjoined from committing any of the following acts —

(1) Displaying signs and posters derogatory or defamatory of plaintiffs, their agents, servants or employees or urging the boycott of the businesses of the plaintiffs, either on the premises of the plaintiffs or on the sidewalks adjacent thereto.

(2) Unreasonably picketing the premises of the business located at the State Theater on College Avenue, Tallahassee, Florida, and at the Florida Theater on Monroe Street in Tallahassee, Florida. Picketing is deemed permissible and will be considered peaceful and lawful when done in numbers and in a manner so as not to interfere with the normal flow of foot traffic on the sidewalk in front of the theater; will not interfere with access of patrons to the ticket window, nor interfere with movement of patrons into or out of

the doors of the theater. Such picketing may be done by not more persons at a time than shall be feasible to meet the requirements set forth herein. Pickets may carry signs which are not defamatory toward the personnel of the theater and may stand or slowly walk upon and along the portion of the sidewalk adjacent to the curb; shall maintain a distance of about eight feet between themselves and shall picket singly, that is, not in pairs as previously provided. Pickets shall yield to persons who are alighting from or entering automobiles temporarily stopped or parked in front of the theater. A picket or pickets may be relieved and substituted for another or other pickets, but in making the substitutions such shall be done one at a time and in such a manner as to not interfere with or obstruct foot traffic on the sidewalk. Persons not carrying signs but acting with the pickets in maintaining the picketing, such as arranging for substitution or supplying a sign, shall be kept to as small a number as feasible and shall avoid any unnecessary mingling with the pickets. Such pickets and other mentioned persons shall conduct themselves in an orderly manner and not seek to engage in conversation with patrons or prospective patrons of the theater, and all verbal communications shall be in normal conversational manner.

(3) From interfering with the operation of plaintiffs' theaters.

(4) From blocking the sidewalks in front of and adjacent to said theaters.

(5) From obstructing or attempting to obstruct the doorways to said theaters.

(6) From entering upon or attempting to enter upon the premises of said theaters, without the permission, express or implied, of the manager or agent of the owners of the theater.

(7) From interfering with the free ingress and egress of the customers of the plaintiffs at said places of business.

(8) From placing telephone calls to the places of business of the plaintiffs, except for the purpose of transacting legitimate business with the plaintiffs.

(9) From otherwise interfering with the methods of operation of said theaters.

It is further ordered, adjudged and decreed that in the event the sheriff of Leon County or his deputy or any law enforcement officer acting with said sheriff or deputy shall observe any person acting in violation of this injunction said law officer shall thereupon make known or attempt to make known to said persons the substance of the contents of this injunction, and should said

person thereupon continue to act contrary to the prohibitions of the said injunction, then in that event said law officer shall attach the body of said person and bring said person before this court forthwith for further proceedings.